Bell, J.
The appellant is a fraternal benefit society, created and existing by virtue of the laws of the state of Colorado; and its objects are the maintenance of a fraternal benefit society on the lodge plan, with a secret ritual, to provide and maintain, by means of assessments upon its members, a benefit fund from which shall be paid to designated relations or, dependents of each deceased member, who, at the time of death, is in good standing by having paid all lawful demands in due time, a sum not exceeding $2,000, $1,000 if- the insured dies in one year, $1,500 if the insured dies between one and two years, $2,000 if the insured dies after three years after being admitted as a member, and a small ■ sum to mark the grave.
The insured lived as a member fifteen months and seven days. Her expenses, under her certificate, were an initiation fee and an assessment of $1.40 during her life at fixed periods. We do not know the exact amount which she paid, but her investment, under the certificate, is probably very small. The amount of the judgment is $1,375.65.-
On the 22nd day of July, 1909, the parties hereto submitted the case to the court, on an agreed statement of facts, for its decree, which agreed statement of facts is as follows:
‘ ‘It is hereby agreed by and between the above named plaintiffs, by Frank J. Baker,' their attorney, and the above named defendant, by B. M. Carr, its attorney, that the following shall be, and they are "hereby declared to *306 be, the agreed statement of facts upon which this case shall be submitted for trial to the district court of said county of El Paso:
“First. That Anna M. Workhausen is the duly appointed, qualified and acting guardian of Mary Rausch and Minnie Rausch, who are minors and the sole heirs of Conrad Rausch and Minnie Rausch, husband and wife, both deceased.
“That the defendant corporation is a fraternal benefit society, not for profit, organized under the laws of the state of Colorado.
“That the-said Minnie Rausch was a member of said society, holding certificate No. 63762 therein, for the principal sum-of two thousand dollars ($2,000) with benefits thereunder payable to Conrad Rausch, her husband.
“That the said Minnie Rausch signed her application for the membership in said society, and the certificate issued to her, as aforesaid, without having her attention called specifically to the conditions upon the back of said certificate, or' contained in the application and constitution and by-laws of said society. Said certificate issued to Minnie Rausch as aforesaid contained the following condition:
“ ‘This certificate is hereby made expressly subject to all conditions endorsed or printed hereon, all of which are hereby made a part hereof, whether printed upon the face or back, and also all conditions named and provided in the constitution of the Women of Woodcraft adopted by its Grand Circle and by the by-laws of said circle. It shall not be enforced at any time when the neighbor to whom it is issued stands suspended, or is not in good standing pursuant to the provisions of said constitution and by-laws, as the same are now in force or5as they may be hereafter regularly adopted or amended and in force at the time of the death of the neighbor named in this certificate. ’
“Second. That, on or about the 1st day of January, *307 A. D> 1907, the bodies of Minnie Rausch and Conrad Rausch, who was named as the beneficiary under the said certificate of membership in the defendant association, were both found dead; that the skull of Minnie Rausch was crushed and brains protruding, from the blow's of a blunt instrument, and her body was covered with numerous stab wounds and blood, and lying upon the floor; and the body of Conrad Rausch was found lying upon the bed unwounded but so contorted that the circumstances pointed strongly to murder and suicide, but as to which died first is not definitely decided."
“That the said Conrad Rausch inflicted said wounds upon the body of Minnie Rausch which caused her death, and then took his own life while of insane mind.
“Third. That the defendant society refuses payment under said certificate No. 63762 because of the condition thereon rendering the same null and void and the benefits thereunder forfeited in the event that the member is killed by the beneficiary.
“That the printed condition upon the back of said certificate No. 63762 issued to Minnie Rausch, as aforesaid, was as follows:
“ ‘If the member to whom «this certificate shall be issued shall be murdered by any beneficiary named herein, or who may claim benefits hereunder, or should any beneficiary named in this certificate, or who may claim benefits hereunder, cause the death of any such member directly or indirectly, intentionally or accidentally, then any benefits which such beneficiary might otherwise have received under the provisions of this certificate shall revert to the Grand Circle. ’
“In Witness• Whereof, We have hereunto set our hands this 30th day of June, A. D. 1909.
“FRANK J. BAKER,
“Attorney for Plaintiff.
“B. M. CARR,
“Attorney for Defendant.”
*308 The result of this case must depend largely upon the construction of the terms used in the printed condition upon the back of certificate No. 63762, which reads as follows :
“If the member to whom this certificate shall be issued shall be murdered by any beneficiary named herein * * * or should any beneficiary named in this certificate * * * cause the death of sitch member directly or indirectly, intentionally or accidentally, then any benefits which such beneficiary might otherwise have received under the provisions of this certificate shall revert to the Grand Circle.”
Counsel for appellant does not contest the sufficiency of the insanity of the beneficiary, set up in the agreed statement of facts, to render him incapable of distinguishing between right and wrong relating to the killing of the insured, and, therefore, we shall assume that there was no intent to murder; hence, no murder committed. If the beneficiary was so insane as aforesaid, then he would likewise be not guilty of any intentional killing. The agreed statement of facts shows that no intermediate means were used to bring about the insured’s death; hence, there has been no indirect killing. The killing was not done accidentally, unless the killing by a person so insane as to be incapable of distinguishing between right and wrong relating thereto may legally be called an accidental killing.
From an early date in England, as well as in this country, the courts have often referred to self-destruction or suicide by insane persons as accidental killings, and it is quite probable that the framers of the certificate or policy of insurance in this case meant to use the word “accidentally” in the same sense. However, we have no judicial authority for so applying the term to a killing by an insane beneficiary. — Borradaile v. Hunter, 5 Man. & Gr., 646, 651, 654, 44 E. C. L., 339, 342, 343; Pierce v. *309 Travellers’ Life Ins. Co., 34 Wis., 389, 396; Breasted v. Farmers’ L. & T. Co., 8 N. Y., 299, 306, 89 Am. Dec., 482; Marceau v. Travellers’ Ins. Co., 101 Cal., 346, 35 Pac., 856, 36 Pac., 813.
Counsel, under stipulation in agreed statement of facts, concede:
“That on or about the 1st day of January, A. D. 1907, the bodies of Minnie Rausch and Conrad Rausch, who was named as beneficiary under the said certificate of membership in the defendant association, were both found dead; that the skull of Minnie Rausch was crushed and brains protruding from the blows of a blunt instrument, and her body was covered with numerous stab wounds and blood, and lying upon the floor; and the body of Conrad Rausch was found lying upon the bed unwounded, but so contorted that the circumstances pointed strongly to murder and suicide, but as to which died first is not definitely decided.
‘ ‘ That the said Conrad Rausch inflicted said wounds upon the body of Minnie Rausch which caused her death, and then took his own life while of unsound mind.”
It seems hardly possible that the beneficiary could have so crushed the skull of the insured that her brains should have protruded, without causing instant death, or death before the beneficiary could have taken poison, and suffered the death that his condition would seem to indicate.
The application of the insured for the certificate, and the certificate or policy itself, clearly indicate that it was the mutual intention of the parties that if the beneficiary, directly or indirectly, intentionally or accidentally, or by murder, caused the death of the insured that all benefits which would otherwise go to the beneficiary or his successors in interest should revert to the grand circle.
These stipulations are clear and explicit and should be kept inviolate and enforced against the beneficiaries, *310 unless such enforcement would be contrary to a sound public policy.
The ordinary life insurance policy is attended with certain well known canons of construction peculiar thereto, beyond which the ordinary rules of construction, pertaining to other contracts, apply.
This court, in speaking to this point, tritely said:
“It has been repeatedly decided in this state that the policy is the contract of insurance, and that it is to be considered and construed by the same rules of construction and interpretation as other contracts, so as to carry out the intention of the parties.”
Daly v. The Concordia Fire Ins. Co., 16 Colo. App., 350, 65 Pac., 416; Ins. Co. v. Taylor, 14 Colo., 499, 24 Pac., 333, 20 Am. St., 281; Ins. Co. v. Barker, 6 Colo. App., 535, 41 Pac., 513.
The supreme court of Indiana, speaking to the same question, said:
“ While forfeitures are never favored, yet if upon a reasonable construction it appears that the parties contracted for a forfeiture upon certain conditions it only remains for the courts to enforce the contract as the parties have made it. It is neither unlawful nor against the public policy for a contract of life insurance to stipulate that upon certain conditions or contingencies the policy should become void.”
Northwestern Life Ins. Co. v. Hazelett, 105 Ind., 212, 215, 4 N. E., 582, 55 Am. Rep., 192; Douglas v. Knickerbocker Life Ins. Co., 83 N. Y., 492.
There are no preponderating equities herein favoring the insured or her beneficiaries. There is no grasping corporation seeking to enrich itself at the expense of these appellees. It is charged by the beneficiaries, themselves, in their complaint that the appellant is a benevolent and fraternal benefit society and it is stipulated in the agreed statement of facts: “That the appellant corporation is a fraternal benefit society, not for profit.”
*311 We are unable to see wherein upholding the conditions upon which the membership of the insured was accepted contravenes any question of sound public policy, while, upon the other hand, we do see wherein it may eradicate from the minds of many morally weak beneficiaries temptations which might lead them on to murder.
The removal, by foul means, of those standing between anxious beneficiaries and property interests is quite prevalent. With, the publicity of these dangers through many indictments and trials prevailing throughout the country, it is not strange that this society should seek to remove the temptation of anxious expectants to bring about premature deaths of the insured, and to press the counter suggestion that if beneficiaries in any manner whatever cause the death of insured persons the circle penalty shall be a loss of all claims to the benefits provided in the certificate.
Feeling that we must uphold the conditions in the certificate or policy or make a new contract for the parties, and believing that it does not contravene any principle of sound public policy, the judgment should be and is hereby reversed, with an instruction to the trial court to dismiss the same with costs.
Cunningham, C. J., not participating.
Morgan, J., dissenting.